UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
WINDWARD BORA LLC,                                  :
                                                    :
                        Plaintiff,                  :
                                                    :        REPORT AND
        -against-                                   :        RECOMMENDATION
                                                    :
MAMADU I BARRIE, a/k/a Mamadu Barrie,               :        19-CV-7272 (EK)(MMH)
                                                    :
                        Defendant.                  :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Windward Bora LLC ("Windward Bora") initiated this diversity action against

Defendant Mamadu I. Barrie ("Barrie"), pursuant to New York Real Property Actions and

Proceedings Law ("RPAPL") §§ 1301 *et seq.*, seeking to foreclose on a mortgage encumbering

the property located at 135-18 Cheney Street, Jamaica, New York 11434 and known on tax

maps as Block 12992, Lot 28 (the "Property").  (*See generally* Compl., ECF No. 1.)[1]  Before

the Court is Windward Bora's motion for summary judgment (Pl. Mot., ECF No. 55)[2] and

Barrie's cross-motion for summary judgment and for sanctions (Def. Mot., ECF No. 56).[3]  The

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination  in the
ECF header unless otherwise noted.  Citations to the Local Civil Rules are to the Rules as of
October 15, 2021, the operative rules when the motion was filed.

[2] Windward Bora's motion includes a memorandum of law (Pl. Mem., ECF No. 55-10), the
affirmation of Eitan Korb (Korb Decl., ECF No. 55-1), the declaration of Rafi Hasbani (Hasbani
Decl., ECF No. 55-2) and its seven exhibits (Hasbani Decl. Exs. A–G, ECF Nos. 55-3 through 55-
9), Windward Bora's reply brief (Pl. Reply, ECF No. 60-4), Hasbani's supplemental declaration
(Hasbani Supp. Decl., ECF No. 60) and its sole exhibit (Hasbani Decl. Ex. J, ECF No. 60-2), and
Windward Bora's Rule 56.1 "counterstatement," which responds to Barrie's 56.1 statement of
facts and purportedly offers "counterfacts" (Pl. 56.1 Resp., ECF No. 60-3).  Windward Bora refers
to "the Weinreb Affirmation" and "the Devico Affidavit" (Pl. Mem., ECF No. 55-10 at 9), but no
such documents are attached to the motion papers.

[3] Barrie's submission includes a memorandum of law (Def. Mem., ECF No. 56-1), the declaration
of Daniel H. Richland (Richland Decl., ECF No. 56-2) and its thirty-six exhibits (Richland Decl.
Exs. A–JJ, ECF Nos. 56-4 through 56-39), a Rule 56.1 Statement of Facts (Def. 56.1 Stmt., ECF

Honorable Eric R. Komitee referred the motions for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Windward Bora's motion for summary judgment should be **granted in part and denied in part** and Barrie's motion for summary judgment and motion for sanctions should be **denied**.

## I.     BACKGROUND

### A.     Facts

The Court has considered the parties' declarations, attached exhibits, and the Rule 56.1 Statements of Facts and opposing 56.1 Statements.[4] The Court must and will construe the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, the parties consider the following facts undisputed, or the opposing party has not proffered evidence in the record to dispute them.

---

No. 56-3), Barrie's reply brief (Def. Reply, ECF No. 61-4), Richland's supplemental declaration (Richland Supp. Decl., ECF No. 61) and its two exhibits (Richland Supp. Decl. Exs. A–B, ECF Nos. 66-1 through 66-2), and Barrie's responsive Rule 56.1 statement (Def. 56.1 Resp., ECF No. 61-3).

[4] Windward Bora did not file a Rule 56.1 Statement with its motion for summary judgment. Instead, Windward Bora filed a Rule 56.1 Statement one day later with its opposition to Barrie's cross motion for summary judgment. (Pl. 56.1 Stmt., ECF No. 60-1.) While failure to comply with Local Rule Civ. 56.1 provides a basis to deny a motion for summary judgment, *Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015), "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). The Court will accept Windward Bora's belated Rule 56.1 Statement because the facts contained therein are largely duplicative of the documents filed as exhibits to Windward Bora's motion, thus mitigating or eliminating any prejudice against Barrie (who offered his own evidence). *See M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 553 (E.D.N.Y. 2010) ("Even in the absence of a Rule 56.1 statement altogether, courts have proceeded to rule on the basis of the underlying evidence.") (collecting cases). That said, the better practice to aid and expedite the Court's review of the voluminous record is to include a Rule 56.1 statement with the motion papers.

Windward Bora is a Delaware limited liability company whose sole member, Yonel Devico, was a citizen of Morocco and a U.S. lawful permanent resident when this action was initiated. (*See* Pl. 56.1 Stmt., ECF No. 60-1 ¶¶ 1–2; Def. 56.1 Resp., ECF No. 61-3 ¶¶ 1–2.) At all relevant times, Barrie has been the owner of the Property. (*See* Def. 56.1 Stmt., ECF No. 56-3 ¶ 1.)

On August 22, 2006, Barrie executed a promissory note (the "Note") in the principal amount of $69,500.00 plus interest in favor of Reliable Mortgage Bankers Corp. ("RMBC"). (Hasbani Decl. Ex A, ECF No. 55-3 at 26–30.) The Note requires Barrie to make monthly payments of principal and interest, beginning on October 1, 2006, until Barrie has paid all the principal, interest, and other charges. (*Id.* at 27.) On the same date, to secure the Note, Barrie executed a mortgage (the "Mortgage") with RMBC. (*Id.* at 13–25.) The Queens County Clerk's Office recorded the Mortgage with City Register File Number ("CRFN") 2006000553708 on October 3, 2006. (*Id.* at 12.) Barrie used some of the funds from the Mortgage to open Mama Africa Restaurant in Jamaica, Queens, though the restaurant later closed. (Hasbani Decl. Ex. G ("Barrie Dep."), ECF No. 55-9 at 16–17.)

The Note and Mortgage secure a secondary lien on the Property. (Barrie Dep., ECF No. 55-9 at 15.) Barrie executed the primary note and mortgage on the same date as the Note and Mortgage in this action. (*Id.*) On February 19, 2008, Aurora Loan Services, LLC commenced a mortgage foreclosure action against Barrie in Queens County Supreme Court related to the primary mortgage. (Richland Decl. Ex. B, ECF No. 56-5 (summons & complaint in *Aurora Loan Services, LLC v. Barrie et al.*, Index No. 4232/08).)[5] On February 9, 2009,

_____

[5] While Barrie does not attach a copy of the primary mortgage, the Court takes judicial notice of exhibits attached to the complaint in *Lehman XS Trust Mortgage Pass-Through Certificates, Series*

that court issued a Judgment of Foreclosure and Sale against the Property on the first mortgage in the amount of $595,041.07.  (*Id.* Ex. C, ECF No. 56-6.)  Between 2009 and 2012, while Aurora's foreclosure action was pending, Barrie worked with a nonprofit group to modify his first mortgage.  (Barrie Dep., ECF No. 55-9 at 28–29; Richland Decl. Ex. E, ECF No. 56-8.) As of 2012, the first mortgage was substantially higher than the Property's fair market value and the nonprofit group advised Barrie to settle his debt.  (Richland Decl. Ex. D, ECF No. 56-7; Barrie Dep., ECF No. 55-9 at 28–29.)  Also in 2012, Barrie was contacted by a company that offered to satisfy the Note and Mortgage at issue in this action for a one-time payment. (Barrie Dep., ECF No. 55-9 at 25, 27.)  Barrie paid approximately $5,000 to this company via certified check in full satisfaction of the debt.  (*Id.* at 24, 26–27.)  Barrie does not remember the name of the company, has no documents to show this payment was made, and has not made any payments on the Note and Mortgage since the $5,000 payment in 2012.  (*Id.* at 30.)

Beginning in 2015, the Note and Mortgage were transferred from and to several entities. (Def. 56.1 Stmt., ECF No. 56-3 ¶¶ 20–21, 24; Pl. 56.1 Resp., ECF No. 60-3 ¶¶ 20–21, 24.)  On May 26, 2015, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for RMBC, assigned the Mortgage to Bucks Financial V, LLC ("Bucks Financial").  (Richland Decl. Ex. G, ECF No. 56–10.)  On February 8, 2019, Bucks Financial assigned the Mortgage to RCS Recovery Services LLC ("RCS").  (*Id.* Ex. H, ECF No. 56–11.)  Finally, on October

---

*2006-19, U.S. Bank National Association, as Trustee v. Mamadu I. Barrie et al.*, Index No. 724322/2024, a mortgage foreclosure action on the Property in Queens County Supreme Court. (*See Lehman* Compl. Ex. C, NYSCEF Doc. No. 6 at 1–25 (primary note, mortgage, and allonges).) The primary mortgage in the amount of $556,000 was recorded with CRFN 2006000553707 on October 3, 2006, the same date as the Note and Mortgage in this case.  (*Id.*; *see also* Barrie Dep., ECF No. 55-9 at 15.)

29, 2019, RCS assigned the Mortgage to Windward Bora. (*Id.* Ex. K, ECF No. 56–14.)[6] Despite the various transaction dates, each assignment was recorded with the City Register on November 19, 2019, a few weeks before Windward Bora filed this action. (*Id.*)

On September 30, 2019, the law firm of Margolin, Weinreb & Nierer, LLP ("Margolin, Weinreb") mailed notices of default to Barrie at the Property, specifically: (1) a letter ("the Demand Letter") stating that the total amount of interest arrears as of that date is $46,390.19 and principal balance due is $69,219, and demanding payment to Windward Bora by October 30, 2019; and (2) a notice pursuant to RPAPL § 1304 (the "§ 1304 Notice") stating that the home loan is 2,099 days and $46,390.19 in default. (Hasbani Decl. Ex. A, ECF No. 55-3 at 43–47.)

## B. Procedural History

Windward Bora, represented by Margolin, Weinreb, initiated this action for foreclosure on December 30, 2019, claiming Barrie's default beginning January 1, 2014 and that Barrie owes $115,609.19 on the Mortgage. (Compl., ECF No. 1 ¶¶ 12, 16.) Barrie answered the Complaint on February 13, 2020, asserting twenty affirmative defenses. (Answer, ECF No. 12.) The Court referred the parties to mediation on consent and stayed formal discovery. (Aug. 6, 2020 Order.)

The following week, the law firm of Hasbani & Light, P.C. replaced Margolin, Weinreb as Windward Bora's counsel. (*See* ECF No. 17.) Barrie immediately requested to vacate the mediation referral order and to lift the stay of discovery, while Windward Bora requested

---

[6] Unlike the previous assignments, which were prepared and signed on the same date for each document, the assignment from RCS to Windward Bora was prepared on October 8, 2019 and notarized on October 29, 2019. (Richland Decl. Ex. K, ECF No. 56-14 at 2.)

additional time to schedule mediation. (ECF Nos. 18–19.) The Court lifted the discovery stay on October 27, 2020. (Oct. 27, 2020 Order.) Thereafter, the Court resolved multiple discovery disputes between the parties. (*See, e.g.*, Dec. 17, 2020 Order (granting in part Barrie's order for discovery); Mar. 1, 2021 Order (granting in part and denying in part Barrie's motion for discovery); Apr. 12, 2021 Order (granting Barrie's motion to preclude Windward Bora from calling at trial witnesses not identified during discovery); May 12, 2021 Order (denying Windward Bora's motion to quash subpoenas and deeming all other discovery as complete or stayed); Aug. 13, 2021 Min. Entry & Order (lifting discovery stay to permit limited third-party witness deposition); Sept. 23, 2021 Order (denying Windward Bora's motion for discovery and noting that fact discovery was closed).)

On October 12, 2021, each party requested a pre-motion conference for their anticipated motions for summary judgment. (ECF Nos. 46–47.) On February 11, 2022, the Court ordered briefing on these motions and directed the parties to separately provide their respective positions regarding this Court's subject matter jurisdiction, and the parties complied. (*See* Feb. 11, 2022 Min. Entry, ECF No. 49.) The parties submitted jurisdiction briefings on February 16, 2022 and March 2, 2022 and cross-moved for summary judgment on May 9, 2022. (*See* ECF Nos. 50, 52, 55, & 56.) The parties presented limited oral argument on June 7, 2022, and the Court reserved decision. (June 7, 2022 Min. Entry, ECF No. 63.) At a hearing on September 14, 2022, the Court heard further argument regarding its subject matter jurisdiction and directed Windward Bora to provide a copy of Devico's U.S. citizenship certificate, which Windward Bora filed on September 22, 2022. (Sept. 14, 2022 Min. Entry, ECF No. 64; Pl. Ltr., ECF No. 65.) The next day, on September 23, 2022, Barrie withdrew his ninth affirmative defense (lack of subject matter jurisdiction). (ECF No. 66.) In an order

dated September 27, 2022, the Court determined that Plaintiff properly established subject matter jurisdiction and referred the pending motions for summary judgment for report and recommendation. *Windward Bora v. Barrie*, No. 19-CV-7272 (EK)(MMH), 2022 WL 4485149, at *3 (E.D.N.Y. Sept. 27, 2022). The parties presented additional oral argument regarding summary judgment at a hearing on March 22, 2024, and the Court reserved decision. (Mar. 22, 2024 H'r'g Tr. ("Tr."), ECF No. 69.)

## II.    <u>LEGAL STANDARDS</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (cleaned up). "When . . . the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (cleaned up). "If the moving party carries its initial burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *Id.* (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c); *see also McKinney*, 49 F.4th at 738 ("Thus, rather than merely deny the moving party's allegations in a general way, the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact.") (cleaned up).

For cross-motions for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (cleaned up). "[I]n reviewing the evidence and considering what inferences may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

While the parties do not brief the issue of this Court's subject matter jurisdiction, the Court has an independent and ongoing obligation to determine same *sua sponte*. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

The Court previously concluded that it has subject matter jurisdiction under 28 U.S.C § 1332(a)(2), which gives district courts original jurisdiction over any civil action where the amount in controversy exceeds $75,000 and is between "citizens of a State and citizens or subjects of a foreign state," except when the action is between "citizens of a State and citizens

or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." *See Barrie*, 2022 WL 4485149 at *2. The Court found that, as a U.S. lawful permanent resident and citizen of Morocco, Devico was "'an alien for the purposes of diversity jurisdiction'" as of the filing of the Complaint and could not have been resident in any state. *Id.* (quoting *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1073 (2021), *reh'g denied*, 141 S. Ct. 1530 (2021)). The Court thus ruled that Windward Bora was a Moroccan citizen because "the citizenship of a single-member LLC is measured by reference to the citizenship of that member, regardless of the member's domicile." *Id.* at 3 (citing, *inter alia*, *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998)).

Subsequently, the Second Circuit clarified that in determining an LLC's citizenship for diversity jurisdiction analysis, courts must consider the national citizenships of the LLC's U.S. lawful permanent resident members *and* those members' state domiciles.

> Some district courts have pointed to our decisions in *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012) and [*Advani*] for the proposition that the domiciles of members of an unincorporated association are irrelevant to diversity jurisdiction. *Barrie*, 2022 WL 4485149 at *3. These cases do not stand for that proposition. In *Bayerische Landesbank*, the defendant LLC's sole member was another LLC whose individual members were all U.S. citizens and residents, which ensured diversity from the plaintiff, a German corporation. *See Bayerische Landesbank*, 692 F.3d at 48–49. And in *Advani*, we determined that diversity was lacking because the plaintiff, a U.S. corporation, failed to allege that the members of the defendant unincorporated associations were diverse. *Advani*, 140 F.3d at 160–61. In neither case did we hold that an unincorporated association could, consistent with the diversity statute, sue a citizen of the same state in which its members were domiciled as lawful permanent residents.
>
> In sum, we apply a simple rule when determining whether there is diversity jurisdiction over a case involving an unincorporated association with lawful permanent resident members: if there would be no jurisdiction if the case involved only an unincorporated association's permanent resident members but

not the association itself, there can be no jurisdiction in the case involving the unincorporated association.

*Windward Bora LLC v. Browne*, 110 F.4th 120, 128–29 (2d Cir. 2024).

Applying this rule, the Court must determine Devico's domicile, defined as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). As the party asserting the Court's subject matter jurisdiction, Windward Bora bears the burden to establish by a preponderance of the evidence that Devico was not domiciled in New York when this action was filed in 2019. *See id.* In determining domicile, courts typically consider "current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes." *Levy v. Suissa*, No. 16-CV-2532 (EK)(ARL), 2021 WL 2402240, at *3 (E.D.N.Y. Mar. 19, 2021), *R. & R. adopted*, 2021 WL 2401011 (E.D.N.Y. June 11, 2021) (cleaned up). Other factors include "whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Lever v. Lyons*, No. 16-CV-5130 (MKB)(SJB), 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (cleaned up).

In its "counterstatement of material facts," Windward Bora states that Devico was domiciled in Florida, but cites to allegations in the Complaint to support this assertion. (Pl. 56.1 Resp., ECF No. 60-3 at 4 ¶ 2 (citing Compl. ¶¶ 3–4).) However, in the supplemental jurisdiction briefing after the February 11, 2022 conference, Windward Bora includes evidence to support a finding that Devico was domiciled in Florida in December 2019 when the

Complaint was filed. (*See, e.g.*, ECF Nos. 52-2 to 52-4 (Devico deposition transcripts and exhibits in *Windward Bora LLC v. Stuyvesant Construction Corp.*, No. 19-CV-7275 (TAM)); ECF No. 52-5 (copy of Devico's driver's license showing date of issue in April 2019).) While Barrie introduces evidence of Devico's ties to New York, the evidence predates Devico's testimony and driver's license or includes irrelevant dates long after the Complaint.

In sum, the Court respectfully recommends a finding that, under the Second Circuit's rule in *Browne*, Windward Bora has established Devico's domicile in Florida, and therefore Windward Bora's Florida citizenship, by a preponderance of the evidence. As a result, the Court has subject matter jurisdiction.

## B.    *Prima Facie* Case

"'Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note.'" *Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 274 (E.D.N.Y. 2023) (quoting *Builders Bank v. Warburton River View Condo LLC*, No. 09-CV-5484, 2011 WL 6370064, at *2 (S.D.N.Y. Dec. 20, 2011) and citing *FGH Realty Credit Corp. v. VRD Realty, Corp.*, 231 A.D.2d 489, 647 N.Y.S. 2d 229, 230 (2d Dep't 1996)). Additionally, "'[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981, 19 N.Y.S.3d 543 (2d Dep't 2015)). "If these elements are established, plaintiff gains a presumptive right to collect on the debt that can only be overcome by a meritorious affirmative defense." *CIT Bank, N.A. v. Tineo*,

No. 17-CV-5119 (JBW), 2019 WL 6828360, at *3 (E.D.N.Y. Dec. 13, 2019) (citation omitted).

The parties do not dispute the existence and validity of Barrie's obligation to pay the debt. (Tr., ECF No. 69 at 8.) Barrie testified to taking out a second loan on the Property. (Barrie Dep., ECF No. 55-9 at 13–14.) With the Complaint, Windward Bora submits copies of the Note and Mortgage reflecting that this is a secondary lien on the Property. (Hasbani Decl. Ex. A, ECF No. 55-3 at 9–33 (mortgage, note, allonges); *see generally id.* (mortgage documents containing footer "NEW YORK-SECOND MORTGAGE".) The records reflect that Barrie executed the Note and Mortgage on August 22, 2006 in the amount of $69,500. (*Id.* at 27–30.) The Note and Mortgage both state that failure to make each monthly payment in full on the due date will constitute a default. (*Id*. at 16, 27.) According to the terms of the Mortgage, the lender may send a notice of default to Barrie, notifying him that the overdue amount must be paid by a certain date. (*Id*. at 19.) If Barrie fails to pay by that date, Paragraph 20 of the Mortgage allows the lender to require immediate payment in full of the remaining unpaid amount. (*Id*. at 19–20.)

Further, Windward Bora establishes its standing to seek foreclosure because it was the assignee of the Mortgage at the time this action was filed. *See OneWest Bank*, 827 F.3d at 222 ("'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'") (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578 (2d Dep't 2009)). The chain of assignments included with the Complaint shows that Windward Bora was the holder of the Note and Mortgage as of

November 15, 2019, before the Complaint was filed. (Hasbani Decl. Ex. A, ECF No. 55-3 at 35–41.)

Windward Bora also establishes Barrie's default on the debt obligation based on Barrie's deposition testimony. Barrie testified that his last payment on the Note and Mortgage was in 2012, when he paid $5,000 to an unidentified company—not RMBC, his then-mortgage servicer—to satisfy the debt. (*See* Barrie Dep., ECF No. 55-9 at 23–24.) Barrie admitted that he was already in default on the Note and Mortgage before the $5,000 payment in 2012 and that he could not recall the last payment he had made on the loan before then. (*Id*. at 30–31.) Moreover, Barrie also conceded that the $5,000 payment was less than the amount owed on the Note and Mortgage at that time. (*Id.* at 23–24.) Barrie's admissions are sufficient to establish his default on the Note and Mortgage. *See, e.g.*, *Windward Bora LLC v. Browne*, No. 20-CV-4748 (BCM), 2023 WL 2744684, at *12 (S.D.N.Y. Mar. 31, 2023), *aff'd*, 110 F.4th 120 (2d Cir. 2024) (defendant borrowers' testimony that they "stopped making payments on their debt" was sufficient to establish default); *Windward Bora, LLC v. Regalado*, 751 F. Supp. 3d 122, 129 (E.D.N.Y. 2024) (default established when defendant borrower admitted making no loan payments during four-year period before plaintiff initiated foreclosure action), *appeal withdrawn*, No. 24-2768, 2025 WL 242249 (2d Cir. Jan. 3, 2025).

Despite these admissions, Barrie argues that Windward Bora fails to establish his default on the Note and Mortgage because Eitan Korb's affidavit is not based on personal knowledge. (*See* Def. Mem., ECF No. 56-1 at 21–29.) The Court disagrees. "Federal Rule of Civil Procedure 56(c) requires a party moving for summary judgment to submit supporting affidavits or declarations based on 'personal knowledge.' . . . Nevertheless, affiants 'may also testify to the contents of records they have reviewed in their official capacities.'" *Avail 1 LLC*,

680 F. Supp. at 274 (quoting Fed. R. Civ. P. 56(c) and *Fletcher v. Standard Fire Ins. Co.*, 80 F. Supp. 3d 386, 394 (E.D.N.Y. 2015), and collecting cases). As Windward Bora's authorized representative, Korb stated that he has personal knowledge based on his review of Windward Bora's business records involving mortgage loans, including the Note and Mortgage. (*See* Korb Decl., ECF No. 55-1 ¶¶ 4–7.) The affidavit is thus admissible for summary judgment purposes under federal law. *See Avail 1 LLC*, 680 F. Supp. at 275 n.8 ("Because the purported conflict in the instant action stems from Federal Rule of Civil Procedure 56, a federal procedural rule, the Court applies federal law" in this diversity action).

Based on the foregoing, the Court finds that Windward Bora has established a *prima facie* case for foreclosure.

## C.    Affirmative Defenses

"'Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists.'" *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 (E.D.N.Y. 2019) (quoting *Builders Bank v. Charm Devs. II, LLC*, Nos. 09-CV-3935 & 09-CV-4410, 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010)). "The burden . . . shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2018) (citing *Fleet Nat'l Bank v. Olasov*, 16 A.D.3d 374, 793 N.Y.S.2d 52, 52–53 (2d Dep't 2005) and *U.S. Bank Tr. Nat'l Ass'n Tr. v. Butti*, 16 A.D.3d 408, 792 N.Y.S.2d 505, 506 (2d Dep't 2005)).

Windward Bora seeks summary judgment as to the 20 affirmative defenses asserted in Barrie's answer. (Pl. Mem., ECF No. 55-10 at 12–26.) As of the March 22, 2024 motion hearing, Barrie asserts only five affirmative defenses: waiver, no debt owed, payment, failure

to comply with contractual conditions precedent, and failure to comply with RPAPL § 1304. (*See* Tr., ECF No. 69 at 8–33; Answer, ECF No. 12 ¶¶ 6, 7, 8, 10, 22.) The Court therefore respectfully recommends that summary judgment should be granted to Windward Bora and denied to Barrie for the 15 remaining affirmative defenses, which the Court deems abandoned or withdrawn.[7] *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Windward Bora, LLC v. Sotomayor*, No. 21-CV-7161 (CS), 2023 WL 2575582, at *4 (S.D.N.Y. Mar. 20, 2023) ("Defendants abandoned the . . . defenses they did not address."); *see also CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS)(ARL), 2018 WL 1701947, at *10 (E.D.N.Y. Mar. 31, 2018) (finding that defendant borrower abandoned remaining defenses where defendant disregarded plaintiff's discussion of affirmative defenses). As described further below, the Court also respectfully recommends that summary judgment should be granted to Windward Bora and denied to Barrie as to every affirmative defense except the Tenth Affirmative Defense, failure

---

[7] Specifically, Barrie abandoned the following 14 defenses by failing to offer evidence or argument: (i) failure to state a claim upon which relief can be granted (First Affirmative Defense); (ii) failure to name necessary and/or indispensable parties (Second Affirmative Defense); (iii) lack of standing (Third Affirmative Defense); (iv) failure to comply with the applicable provisions of New York Banking Law, including, but not limited to, § 595-a(3) (Seventh Affirmative Defense); (v) Windward Bora's alleged damages were caused, in whole or in part, by Windward Bora or its agents' own culpable conduct (Eleventh Affirmative Defense); (vi) Windward Bora is not a holder of the "Note" in due course as such term is defined in the NY UCC § 3-302 (Twelfth Affirmative Defense); (vii) statute of limitations (Thirteenth Affirmative Defense); (viii) laches and estoppel (Fourteenth Affirmative Defense); (ix) failure to comply with RPAPL § 1301 (Fifteenth Affirmative Defense); (x) failure to comply with RPAPL § 1302 (Sixteenth Affirmative Defense); (xi) failure to comply with RPAPL § 1303 (Seventeenth Affirmative Defense); (xii) champerty (Eighteenth Affirmative Defense); (xiii) unclean hands (Nineteenth Affirmative Defense); and (xiv) entitlement to a settlement conference (Twentieth Affirmative Defense). (*See* Answer, ECF No. 12 ¶¶ 3–5, 9, 23–35.) As noted, on September 23, 2022, Barrie withdrew his ninth affirmative defense based on the Court's purported lack of subject matter jurisdiction. (ECF No. 66.)

to comply with RPAPL § 1304.  For that affirmative defense, genuine fact issues preclude summary judgment to both parties.

### 1. Waiver

In his fourth affirmative defense, Barrie contends that Windward Bora waived any principal due because (1) it claims a default date in the Complaint of January 1, 2014, but a default date of June 1, 2014 in summary judgment briefing, and (2) Windward Bora's predecessor in interest accepted the $5,000 payment as a short payoff of the loan. (Answer, ECF No. 12 ¶ 6; Def. Mem., ECF No. 56-1 at 34–35.)  "To successfully assert a waiver affirmative defense, a defendant must meet their 'burden of proving that plaintiff intentionally relinquished a known right.'"  *Adm'r of U.S. Small Bus. Admin. v. Contessa*, No. 19-CV-6127 (PKC)(ST), 2023 WL 2682509, at *8 (E.D.N.Y. Mar. 29, 2023) (quoting *Gustavia Home, LLC v. Cudjoe*, No. 16-CV-3992 (DLI)(CLP), 2019 WL 13171158, at *5 (E.D.N.Y. Mar. 1, 2019), *R. & R. adopted*, Order Adopting R. & R., Mar. 31, 2019)).  Barrie offers no evidence showing that Windward Bora intentionally relinquished its right to foreclose on the property.  On the contrary, the record shows that Windward Bora has continuously pursued this action since issuing the Demand Letter in September 2019.  And, as noted, Barrie's uncorroborated testimony is insufficient to establish that the current or former holders of the Note and Mortgage agreed to accept the $5,000 to satisfy the debt.  *Accord Cap. One Nat. Ass'n v. 48-52 Franklin, LLC*, No. 12-CV-3366 (LGS), 2014 WL 1386609, at *5 (S.D.N.Y. Apr. 8, 2014) (finding that a "bare assertion that certain representatives of the mortgagee made such a promise [to forgo or delay foreclosure] is not enough to create an issue of fact.").  For this reason, summary judgment for Barrie is not warranted for his fourth affirmative defense of waiver.

## 2.     No Debt Owed and Payment, Accord, Satisfaction

In his fifth and sixth affirmative defenses, respectively, Barrie alleges that "[n]o debt is owed to Plaintiff on the loan underlying the mortgage" and "[p]ayment, release, accord and/or satisfaction"—*i.e.*, that he satisfied the Note and Mortgage. (Answer, ECF No. 12 ¶¶ 7–8; Def. Mem., ECF No. 56-1 at 29–31, 35–38.) These defenses are meritless. "A party seeking to establish an accord and satisfaction must demonstrate that there was a disputed or unliquidated claim between the parties which they mutually resolved through a new contract discharging all or part of their obligations under the original contract." *Citigroup v. Kopelowitz*, 47 Misc. 3d 1215(A), 15 N.Y.S.3d 711 (N.Y. Sup. Ct. 2015) (tbl.) (citing *Pothos v. Arverne Houses, Inc.*, 269 A.D.2d 377, 378, 702 N.Y.S.2d 392 (2d Dep't 2000)), *aff'd*, 147 A.D.3d 1014, 48 N.Y.S.3d 223 (2d Dep't 2017). The Mortgage specifically states that Barrie agreed to pay Lender unless Lender states, in writing, that Barrie does not have to do so or unless the law requires otherwise. (Hasbani Decl. Ex. A, ECF No. 55-3 at 16.) Similarly, the Note provides that if Barrie does not pay the overdue amount by the date stated in the default notice, he will be in default. (*Id.* at 27.) Barrie concedes that he has no evidence of a new contract or other document discharging him of these obligations under the Note and the Mortgage, and no documents (such as cancelled checks or bank statements) to corroborate the testimony that he paid $5,000 to satisfy his obligations. (Barrie Dep., ECF No. 55-9 at 22; Tr., ECF No. 69 at 11.) Contrary to Barrie's assertions (*see* Def. Mem., ECF No. 56-1 at 30–31), he (not Windward Bora) bears the burden to "raise a triable issue of fact, including with respect to any alleged defenses[.]" *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d at 414–15. Barrie fails to do so here, thus precluding summary judgment for him on his fifth and sixth affirmative defenses.

### 3.     Failure to Comply with Condition Precedent

In his eighth affirmative defense, Barrie alleges "[f]ailure of a condition precedent, including but not limited to failure to properly comply with the default notice provision of the Mortgage and Note."  (Answer, ECF No. 12 ¶ 10.)  Specifically, Barrie contends that the Demand Letter contains the incorrect sums due and an incorrect default date, which are facial defects in the Notice that require dismissal.  (Def. Mem., ECF No. 56-1 at 38.)

This defense fails based on the undisputed notice requirements set forth in the Mortgage and Note.  The Mortgage requires the lender to give Barrie a notice stating: "(i) [t]he promise or agreement that [Barrie] failed to keep; (ii) [t]he action that [Barrie] must take to correct that failure; [and] (iii) [a] date by which [Barrie] must correct that failure[,]" in addition to the consequences of not timely correcting the failure—*i.e.*, default.  (Hasbani Decl. Ex. A, ECF No. 55-3 at 20.)  The Note similarly states that if Barrie fails to timely submit the monthly mortgage payments, the holder of the Note may send a written notice telling him that if he does not pay the overdue amount by a date certain, then he will be in default.  (*Id.* at 27.)  The Demand Letter includes all of the information required under both provisions: it states that the loan is in arrears, thus Barrie has broken the promise to timely submit the monthly payment; it directs him to submit payment to Windward Bora by October 30, 2019; and it even advises him that "[p]rior to submitting payment, you may wish to call Windward Bora to verify the exact amount."  (*Id.* at 43–45.)  The terms of the Note and Mortgage include no other requirements regarding the pre-default notice to Barrie.  And though Barrie admits receiving the Demand Letter, he did not take any action to cure the identified default.  (*See* Barrie Dep., ECF No. 55-9 at 41–42.)

Further, contrary to Barrie's argument, "a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018). "A dispute as to the exact amount owed by the mortgagor to the mortgagee may be resolved after a reference pursuant to RPAPL [§] 1321, and the existence of such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property." *Hoyer*, 362 F. Supp. 3d at 82 (E.D.N.Y. 2019).

Because Barrie fails to create a triable issue of fact on the eighth affirmative defense of failure to comply with conditions precedent, the Court should deny summary judgment to Barrie on this defense.

### 4.    Failure to Comply with RPAPL § 1304

Finally, in his tenth affirmative defense, Barrie argues that Windward Bora failed to satisfy the notice requirements of RPAPL § 1304. (Answer, ECF No. 12 ¶ 22; Def. Mem., ECF No. 56-1 at 31–33.) In its opening brief, Windward Bora argued that it met the § 1304 requirements. (Pl. Mem., ECF No. 55-10 at 22–23.) In opposition to Barrie's motion for summary judgment, Windward Bora reiterates that claim and argues for the first time that Barrie was not entitled to RPAPL § 1304 notice because he used some of the loan proceeds to open a restaurant. (Pl. Reply, ECF No. 60-4 at 10–11.)

The statute requires that, "with regard to a home loan," a lender or assignee must give notice to the borrower at the property address at least 90 days before commencing legal action against him. N.Y. Real Prop. Acts. Law § 1304(1). The required notice is a condition precedent to the commencement of a foreclosure litigation involving home loans and requires

strict compliance. *Emigrant Bank v. Cohen*, 205 A.D.3d 103, 109, 164 N.Y.S.3d 863, 865–66 (2d Dep't 2022).

After carefully reviewing the record, the Court finds that there is a triable issue of fact as to whether Windward Bora was required to comply with the RPAPL § 1304 notice requirement. Pursuant to RPAPL § 1304(6), a "home loan" means a loan in which:

> (i) [t]he borrower is a natural person; (ii) [t]he debt is incurred by the borrower primarily for personal, family, or household purposes; (iii) [t]he loan is secured by a mortgage or deed of trust on real estate improved by a one to four family dwelling, . . . used or occupied, or intended to be used or occupied wholly or partly, as the home or residence of one or more persons and which is or will be occupied by the borrower as the borrower's principal dwelling; and (iv) [t]he property is located in this state.

N.Y. Real Prop. Acts. Law § 1304(6)(a)(1). The second element, whether Barrie incurred the debt "primarily for personal, family, or household purposes," is not clearly established in the record. While Barrie testified that he used the loan proceeds to open a restaurant in Queens (Barrie Dep., ECF No. 55-9 at 16–17), Windward Bora presents no evidence as to whether Barrie informed the lender of such use at the time of loan origination, the time period relevant to determining whether the debt qualifies as a home loan. *Courchevel 1850 LLC v. Stern*, No. 17-CV-1794 (NGG)(JO), 2018 WL 3193210, at *4 (E.D.N.Y. June 28, 2018) ("One aspect of the definition of 'home loan'—the purposes for which the borrower incurred the debt— clearly depends on the borrower's intent and conduct at the time the loan was originated.") (quoting RPAPL § 1304(6)(a)(1)(ii)). Barrie's testimony also does not confirm whether he used all or some of the loan for the restaurant. Additionally, "[t]he loan does not indicate that the funds were being provided for a business purpose, and the mortgage incorporated language typically used in residential mortgages." *Tuthill Fin. v. Candlin*, 129 A.D.3d 1375, 1376, 13 N.Y.S.3d 599, 601 (3d Dep't 2015). In light of these fact issues, summary judgment on this

affirmative defense is not warranted.  *See id.* (denying summary judgment in mortgage foreclosure action where defendant used some loan funds for a business on the subject property); *Aurora Loan Servs., LLC v. Komarovsky*, 151 A.D.3d 924, 928, 58 N.Y.S.3d 96, 100 (2d Dep't 2017) (denying summary judgment to borrower defendants in mortgage foreclosure action where there was fact issue as to loan's purpose).

In the alternative, if the § 1304 notice requirement is applicable, the record does not establish Windward Bora's "strict compliance" with the statutory requirements.  A § 1304 notice must include several pages of specific text set forth in the statute according to a prescribed template.  N.Y. Real Prop. Acts. Law § 1304(1); *see also Bank of Am., N.A. v. Kessler*, 39 N.Y.3d 317, 321 (2023) (summarizing requirements).  The notice must be sent via registered or certified mail and also by first-class mail to the borrower's last known address and the subject property in a separate envelope from "any other mailing or notice."  N.Y. Real Prop. Acts. Law § 1304(2).  "A foreclosure plaintiff could establish compliance with Section 1304 through proof of the actual mailings, such as affidavits of mailing or domestic return receipts with attendant signatures."  *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 n.2 (2d Cir. 2021) (cleaned up).  Here, Windward Bora attaches to the Complaint copies of the § 1304 Notice, a certified mail label that matches the certified mail number on the § 1304 Notice, and an affidavit from Maureen Prato[8] stating that she served the "New York Statutory Notice" by first class mail to Barrie at the Property on September 30, 2019, more than 90 days before this action was filed.  (Hasbani Decl., ECF No. 55-3 at 47–51.)  However, "no *receipts* were in fact

---

[8] Prato's affiliation is not identified, though she affirms that she is not a party to the action. (Hasbani Decl., ECF No. 55-3 at 51.)

attached—the copies of notices attached to the affidavit contain mail bar codes, which are not the same thing as certified mailing receipts. . . . It is well-established that bar codes alone do not establish proof of mailing." *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 464 (E.D.N.Y. 2022) (collecting cases from this district and New York appellate courts); *cf. Emigrant Bank*, 164 N.Y.S.3d at 866 (RPAPL § 1304 compliance shown when affiant averred that he personally mailed required notice to borrower by both regular *and* certified mail and included "copies of the two certified mail receipts, with corresponding signed acknowledgement cards"). Further, Prato's affidavit does not state that she was familiar with Windward Bora's mailing practices and procedures, and therefore does not establish proof of a standard office practice and procedure to ensure the notices are properly mailed using certified mail and that records of the mailing are regularly maintained. *See Wells Fargo Bank, N.A. v. Trupia*, 150 A.D.3d 1049, 1050–51, 55 N.Y.S.3d 134, 136 (2d Dep't 2017).

In sum, there is a triable issue of fact regarding whether the disputed loan is a "home loan" within the meaning of RPAPL § 1304 such that strict compliance with RPAPL § 1304(1) is required. In the alternative, Barrie raises a genuine factual dispute regarding Windward Bora's strict compliance with RPAPL § 1304(1). For these reasons, the Court respectfully recommends that summary judgment should be denied to both parties as to Barrie's tenth affirmative defense regarding RPAPL § 1304 compliance.

### D.     Motion for Sanctions

Finally, Barrie requests sanctions against Windward Bora pursuant to the Court's inherent powers because of allegedly false statements in Windward Bora's evidence and the generally "frivolous" nature of the claims in the Complaint. (Def. Mem., ECF No. 56-1 at 44–47.) The Court disagrees. To impose sanctions under the Court's inherent authority, a court

must "determine both that challenged conduct was without a colorable basis and that it was pursued in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 282 (2d Cir. 2021) (cleaned up). The Court finds no basis for sanctions against arising from counsel's submissions and there is no evidence that Windward Bora acted in bad faith in seeking to foreclose on the Property or by advancing specific arguments before the Court.[9] The Court therefore respectfully recommends that Barrie's request for sanctions should be denied.

## IV.    **CONCLUSION**

For the reasons stated above, the Court respectfully recommends that Windward Bora's motion for summary judgment at ECF No. 55 should be **granted in part and denied in part**, and that Barrie's motions for summary judgment and sanctions at ECF No. 56 should be **denied**.

A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Komitee. If a party fails

---

[9] The Court directs the parties to the Honorable Dora L. Irizarry's admonitions in *Windward Bora LLC v. Stuyvesant Construction Corp.*, No 19-CV-7275 (DLI) (E.D.N.Y.), a mortgage foreclosure action involving the same plaintiff's and defense counsel as in this case. *See Stuyvesant Construct. Corp.*, Dkt. No. 91 at 15–19 (transcript of March 23, 2023 motion hearing striking the parties' cross-motions for summary judgment and warning counsel to avoid "hyperbolic, self-righteous tone and language," "carelessness," and "lack of attention to detail" in their filings).

to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
May 4, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge