```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  WINDWARD BORA LLC,

                    Plaintiff,               MEMORANDUM & ORDER
                                             19-CV-7272 (EK)(MMH)
           -against-

  MAMDAU I. BARRIE,

                    Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

  Before the Court are the parties' cross-motions for summary judgment, as well as the defendant's motion for sanctions. The Court referred these motions to Magistrate Judge Henry for a Report and Recommendation ("R&R"). Judge Henry filed her R&R on May 4, recommending that the Court grant Windward Bora's motion in part and deny both of Barrie's motions. Barrie filed timely objections to the R&R's proposal of partial summary judgment to Windward Bora. The Court also solicited additional briefing on Barrie's tenth affirmative defense, which concerned the applicability of Section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"). *See* ECF Nos. 73, 74.

  For the reasons outlined below, the Court adopts the R&R in substantial part, but declines to follow it on one issue: the recommendation that summary judgment be denied on Barrie's

tenth affirmative defense.  Instead, the Court concludes that Windward Bora is entitled to summary judgment on that defense as well.  It therefore grants Windward Bora's cross-motion for summary judgment in full, denies Barrie's cross-motion (and his motion for sanctions) in full, and dismisses this action in its entirety.

## I. Background

This order assumes familiarity with the legal and procedural background of this case.  A more thorough explication of the underlying facts and procedural history appears in Judge Henry's comprehensive R&R.  *See* ECF No. 70, at 2-7.[1]

## II. Legal Standard

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The court reviews *de novo* those portions of an R&R to which a party has specifically objected.  *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014) ("A proper objection is one that identifies the specific portions of

---

[1] The parties had a full opportunity to develop the jurisdictional record, both in their summary judgment briefing and in supplemental jurisdictional briefing before Judge Henry.  *See* ECF Nos. 50, 52, 55, 56.  Accordingly, the Court adopts the R&R's recommendations as to subject-matter jurisdiction without ordering additional jurisdictional discovery.  *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

the R&R that the objector asserts are erroneous and provides a basis for this assertion.").[2] Where "no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *State Farm Mut. Auto Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 481 (E.D.N.Y. 2013).

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must demonstrate the absence of any such dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Where the non-movant carries the burden of proof on a given issue, the movant can win summary judgment by pointing out the absence of any evidence supporting "an element essential to [the non-movant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

In a mortgage foreclosure action under New York law, a plaintiff must first establish a *prima facie* case of its right to foreclose. The plaintiff accomplishes this by submitting the "mortgage, the unpaid note, and evidence of the default." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y.

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2018); *see also FGH Realty Credit Corp. v. VRD Realty Corp.*, 231 A.D.2d 489, 490 (2d Dep't 1996). Once the plaintiff makes this showing, it has a "presumptive right" to foreclose. *Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 276 (E.D.N.Y. 2023). "The burden then shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Bent*, 321 F. Supp. 3d at 414-15.

**A.   Windward Bora's Cross-Motion**

   1.   The *Prima Facie* Case

The R&R concluded that Windward Bora had stated a *prima facie* case establishing its right to foreclose. R&R 14 (relying primarily on affidavit by Windward Bora manager). Barrie objects to that conclusion, arguing that Windward Bora adduced no viable evidence of a default in payment. Def.'s Obj. to R&R ¶ 13, ECF No. 71. He argues that the evidence on which Windward Bora relied — an affidavit from a company manager named Eitan Korb stating that Barrie was behind on his payments, *see* Korb Decl. ¶ 12, ECF No. 55-1 — was inadmissible. This objection lacks merit.[3]

"An affidavit . . . used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set

---

[3] Barrie also argues that there is a genuine factual dispute as to whether he satisfied the loan via a payment of around $5,000 in 2012. Def.'s Obj. to R&R ¶¶ 2-11. Because that argument concerns Barrie's affirmative defense for accord-and-satisfaction, rather than implicating the *prima facie* case, the Court addresses that argument in the following section.

4

out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The affidavit need not itself be admissible at trial — it need only identify facts that "will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).

Korb's affidavit satisfied the Rule 56(c)(4) standard, and thereby sufficed to establish Windward Bora's *prima facie* case. Korb is responsible for Windward Bora's recordkeeping. Korb Dep. Tr. 8:8-23, ECF No. 47-1. He averred that he had reviewed the company's payment records, that he had personal knowledge of their contents, and that he could competently testify to their contents at trial. Korb Decl. ¶ 7. He also swore to facts that would support admission of the transaction records under the business-records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Specifically, he stated that Windward Bora's transaction records were routinely created in the course of Windward Bora's business by persons with knowledge of the underlying transactions. Korb. Decl. ¶ 5.

In arguing that the affidavit is inadmissible, Barrie relies exclusively on state cases. *See* Def's Obj. to R&R ¶ 14. That case law is inapposite. In a diversity action like this one, the sufficiency of an affidavit at the summary judgment stage is a matter of federal law. *Avail 1 LLC*, 680 F. Supp. 3d

5

at 275 n.8 ("Because the purported conflict in the instant action stems from Federal Rule of Civil Procedure 56, a federal procedural rule, the Court applies federal law."); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996) ("It is settled that if the [Federal] Rule in point is consonant with the Rules Enabling Act and the Constitution, the Federal Rule applies regardless of contrary state law.").

    2.   Barrie's Affirmative Defenses

        a.   Accord-and-Satisfaction

The R&R also rejected several of Barrie's affirmative defenses, including his claims that (1) he owed no debt to Windward Bora, and (2) he had reached an accord-and-satisfaction with respect to the underlying mortgage. As Barrie recognizes, these defenses effectively merge into one — both rely on the assertion that Barrie made a payment that fully satisfied his obligations under the mortgage. Def.'s Obj. to R&R ¶ 11. In his objections, Barrie argues that there is a genuine factual dispute as to whether such an accord-and-satisfaction occurred, and that Judge Henry therefore erred in recommending summary judgment for Windward Bora. The Court disagrees.

"The party asserting the affirmative defense of accord and satisfaction must establish that there was a disputed or unliquidated claim between the parties which they mutually resolved through a new contract discharging all or part of their

6

obligations under the original contract." *Huimin Sun v. Cai*, 146 A.D.3d 760, 762 (2d Dep't 2017). The burden is on Barrie to show that there is a genuine factual dispute as to the existence of such an agreement. *Bent*, 321 F. Supp. 3d at 414-15.

Barrie has not identified evidence sufficient to carry that burden here. In opposing summary judgment, Barrie relies on his own testimony that, in 2012, he sent a check to a company that agreed to discharge the mortgage in exchange for a payment of around $5,000.[4] *See* Barrie Dep. 24:8-11, ECF No. 55-9. He does not recall the name of the company. *Id.* at 25:17-24. Nor does he recall the precise date or amount of the payment. *Id.* at 24:12-13, 27:3-6. He also concedes that he has no documentation or other evidence supporting the existence of an agreement to discharge the mortgage. *Id.* at 29:12-21. But he argues that his testimony nevertheless creates a genuine factual dispute as to whether the loan was satisfied. Def.'s Obj. to R&R ¶¶ 7-8.

Barrie is mistaken. As Judge Henry pointed out, the loan agreement requires that Barrie make certain payments unless the mortgage holder states in writing that no such payment is necessary. R&R 17; Loan Agreement 16, ECF No. 55-3. The relevant provision reads: "I will pay to Lender amounts

---

[4] Barrie concedes that, before he made the 2012 payment, he was in default. Barrie Dep. 30:9-12, ECF No. 55-9.

necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any) . . . (i) unless Lender tells me, *in writing*, that I do not have to do so, or (ii) unless the law requires otherwise." Loan Agreement 16 (emphasis added). Barrie does not claim that the law exempted him from making these payments.

So, any permissible accord-and-satisfaction would have to be authorized by the lender in writing. *See Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1282 (N.Y. 1977) (when contract requires written modification, and "the only proof of an alleged agreement to deviate from [the] written contract is the oral exchanges between the parties, the writing controls"); *Scher v. Stendhal Gallery, Inc.*, 117 A.D. 3d 146, 162 (1st Dep't 2014) (given no-oral-modification clause in contract, defendant could not prevent summary judgment for plaintiff by pointing to alleged oral modification). And Barrie concedes that he has no written evidence whatsoever to suggest that Windward Bora (or any other mortgagee) agreed to such an arrangement. Barrie Dep. 29:12-21; R&R 17. So, his accord-and-satisfaction defense fails.[5]

---

[5] Although neither party raises this argument, the Court also notes that under New York law, an executory accord (*i.e.*, an agreement to resolve an existing dispute between the parties) is only enforceable if "the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party." *Denburg v. Parker Chapin Flattau & Klimpl*, 624 N.E.2d 995, 1001 (N.Y. 1993); *see also Ognenovski v. Wegman*, 275 A.D.2d 1013, 1015 (4th Dep't 2000) (defining "executory accord"). Thus, Barrie's accord-and-satisfaction defense fails for a second, independent reason.

8

b.   RPAPL Section 1304

Judge Henry also determined (without objection from either party) that summary judgment is not appropriate with respect to Barrie's tenth "affirmative defense" — that is, Windward Bora's ostensible failure to comply with the notice requirements of RPAPL Section 1304.  R&R 19-20.  This Court concludes, however, that Windward Bora is entitled to summary judgment here as well.

Section 1304 states that a lender who extends a "home loan" must notify the borrower at least ninety days before starting foreclosure proceedings.  N.Y. Real Prop. Acts. Law § 1304(1).  A "home loan" is one that is (among other things) "incurred by the borrower primarily for personal, family, or household purposes."  *Id.* § 1304(6)(a)(ii).  While Barrie suggests that Windward Bora's alleged non-compliance with Section 1304 is an affirmative defense against foreclosure, "[i]t is not at all clear that [S]ection 1304 compliance is an affirmative defense . . . ."  *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 465 (E.D.N.Y. 2022).  Instead, compliance with Section 1304 is a "condition precedent to the commencement of a foreclosure action."  *CIT Bank v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021).

That means the plaintiff, not the defendant, has the initial burden of establishing the satisfaction or non-

9

applicability of Section 1304. *U.S. Bank Tr., N.A. v. Sadique*, 178 A.D.3d 984, 985 (2d Dep't 2019); *Alamitos Lending, LLC v. Sutt*, No. 22-CV-971, 2024 WL 3912378, at *5 (W.D.N.Y. Aug. 23, 2024) ("It is Alamitos's burden to establish its compliance with all applicable RPAPL requirements, including by showing that [S]ection 1304's notice requirement does not apply."); *see also* 10A Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2727.1 (4th ed.). If Windward Bora carries that burden, Barrie can avoid summary judgment only by countering with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Here, Windward Bora has produced evidence showing that Barrie used the loan for commercial purposes. To determine the purpose for which a defendant incurred a loan, courts consider both the defendant's stated purpose at the time of origination and the defendant's actual use of the loan proceeds. *See, e.g.*, *Tuthill Fin. v. Candlin*, 129 A.D.3d 1375, 1376 (3d Dep't 2015) (examining "language" used in loan agreement and affidavits about later use of loan proceeds); *Aurora Loan Servs. LLC v. Komarovsky*, 151 A.D.3d 924, 928 (2d Dep't 2017) (examining statements defendant made when applying for the loan, along with averments about the loan's later use).

10

Barrie's loan agreement is silent as to intended use. In discovery, however, Barrie *twice* conceded that he used the loan proceeds to open a restaurant. At his deposition, when asked what he "used the funds from the loan for," Barrie responded that he used them to open a restaurant. *See* Barrie Dep. 16:2-5. Then, in his Rule 56.1 statement, Barrie wrote that he used the funds to open a restaurant. Def.'s Rule 56.1 Statement ¶ 5, ECF No. 56-3. Opening a restaurant is a commercial purpose that falls outside Section 1304's ambit. *Independence Bank v. Valentine*, 113 A.D.3d 62, 66 (2d Dep't 2013). Thus, Windward Bora has met its initial burden of production.

In suggesting otherwise, the R&R stated that the "time of loan origination" is the "time period relevant to determining whether the debt qualifies as a home loan." R&R 20. To make this point, the R&R relied on *Courchevel 1850 LLC v. Stern*, No. 17-CV-1794, 2018 WL 3193210 (E.D.N.Y. June 28, 2018). There, the court held that if a mortgagor resided at the property in question "at origination," Section 1304 requires notice of foreclosure even if the mortgagor no longer lives in the property "at the time foreclosure proceedings commence." *Id.* at *4.

This Court does not disagree that a borrower's purpose at the time of origination is important. The more relevant

question here, however, is whether the borrower's later use of loan proceeds can *shed light* on that up-front purpose. And nothing in *Courchevel* says it cannot. Indeed, in cases like this one, any other approach would be unworkable. Because the loan agreement says nothing about Barrie's initial purpose, his later use of the loan proceeds is effectively the *only* evidence of that purpose. Nothing in *Courchevel* is contrary to this approach.[6]

Absent *any* competent evidence dating to the time of origination, Barrie's own testimony is sufficient for Windward Bora to establish that Section 1304 does not apply. It then falls to Barrie to adduce evidence giving rise to a factual dispute on this question. Indeed, in similar cases, New York courts have required at least *some* evidence that a debtor incurred a loan for a personal, family, or household purpose before denying summary judgment as to the Section's applicability. *Compare Wells Fargo Bank, N.A. v. Ranalli*, 236 A.D.3d 714, 715-16 (2d Dep't 2025) (granting summary judgment where defendant failed to dispute plaintiff's evidence that loan was used for purpose not covered by Section 1304), *with Komarovsky*, 151 A.D.3d at 928 (denying summary judgment where

---

[6] And to the extent that case does conflict with the Court's analysis, it is perhaps worth noting (as Judge Garaufis did) that *Courchevel*'s holding ran contrary to at least five other cases in this district. *See* 2018 WL 3193210, at *3 (citing those cases).

12

evidence suggested loan was used for both "repairs on the subject premises" and "investment purposes").

Barrie has identified no contrary evidence. In his supplemental *briefing* on this issue, Barrie argues that he took out the loan in question to refinance a prior mortgage, and that this refinancing was the "personal, family, or household purpose" that brought the loan within the scope of Section 1304. *See* ECF No. 74 at 1. But the evidentiary record provides no support for this argument, and indeed suggests otherwise. Refinancing is "[a]n exchange of an old debt for a new debt." *Refinancing*, Black's Law Dictionary (12th ed. 2024); *see also Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 82 (2d Cir. 2003). Here, Barrie's testimony reveals that he did not substitute one loan for another; rather, he confirmed that he took out a *second* loan against the same property. *See, e.g.*, Barrie Dep. 36:5-8 (**Counsel:** "[Y]ou stated the loan for [$]69,000 was a second position mortgage; is that correct?"; **Barrie:** "Yes."); *see also* Def.'s Rule 56.1 Statement ¶ 4 ("The Note and Mortgage secure a second lien.").[7]

---

[7] During Barrie's deposition, Windward Bora's counsel asked Barrie why he had "refinance[d] . . . [his] original loan." Barrie Dep. 15:21-22. Barrie responded that the new loan offered a better interest rate. *Id.* at 15:23-25. Barrie relies on *counsel's* imprecision to show that the second loan was simply a refinancing of this first one. *See* ECF No. 74 at 1. But this contradicts Barrie's own characterization of his deposition testimony in his Rule 56.1 statement. There, Barrie cites his deposition to assert that the loan at issue as a second loan against his home, not a refinancing of the original loan. Def.'s Rule 56.1 Statement ¶¶ 4, 13.

13

In sum, there is ample record evidence that Barrie incurred the loan in question for commercial purposes. And Barrie offers no contrary evidence that would create a genuine dispute of fact. So, the Court concludes that Windward Bora is entitled to summary judgment on Barrie's tenth "affirmative defense."

**B.   The R&R's Remaining Recommendations**

Neither party filed objections to any of the R&R's remaining recommendations. Finding no clear error in those recommendations, the Court adopts them in their entirety.

### IV.   Conclusion

For the foregoing reasons, the Court adopts the R&R in part and modifies it in part. Windward Bora's cross-motion for summary judgment is granted in its entirety. Barrie's cross-motion and motion for sanctions are both denied. Windward Bora is directed to submit, within thirty days, a proposed judgment of foreclosure providing for a sale of the property consistent with this order.

SO ORDERED.

```
                              /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge
```

Dated:   July 16, 2025
         Brooklyn, New York